**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**FRANK WEBB,**

      **Plaintiff,**

**v.**                          **No. 10- cv-01022 GBW/KBM**

**KWAL-HOWELLS, INC.,**

      **Defendant.**

## <u>RESPONSE TO MOTION FOR SUMMARY JUDGMENT</u>

The defendant does not show itself entitled to judgment under Rule 56. It construes the facts in a manner most favorable to itself – the movant, when the law requires that the evidence be viewed in a light most favorable to the non-movant, Frank Webb. It blatantly ignores, without discussion, direct evidence of discriminatory animus. It also relies on case law developed before Congress made significant amendments to the Americans with Disabilities Act – amendments designed to reject the legal theories on which defendant relies. Plaintiff's response shows the motion must be denied.

**D.N.M. LR-56.1(b) Additional Facts Material to Resolution of the Motion**

Frank Webb provides the Court with these additional facts omitted from defendant's motion which are material to resolving the motion.

A.    On the day Frank Webb was fired, he was told he was being terminated by his supervisor Vic Slagle. He asked Slagle "You're firing me for being sick?" Slagle replied "I'm afraid so."[1]

B.    Slagle testified that he terminated Frank because of Frank's prior absences on three occasions, once when Frank was seeking medical attention for his shingles and Bell's palsy,[2] and once when Frank was in fact also seeking medical attention[3] although Slagle claims not to know the reason for his absence.[4] The third instance upon which he based his decision to fire Frank occurred when Frank was out on an approved absence, and the store's assistant manager left the store unattended by any other manager.[5]

C.    Slagle's supervisor Miles Tunno told him of the latter incident where the assistant manager left the store unattended by any manager. Tunno was complaining not about Webb but about the assistant manager.[6]

C.    Frank's prior absences were on January 18, 2010 when he sought emergency medical treatment for his shingles and on January 25, 2010 when he obtained treatment from a specialist for his Bell's palsy.[7] The day he had an approved absence that the assistant manager failed to cover the store was on February 5, 2010.[8]

---

[1] Deposition of Frank Webb (hereafter Webb) attached as Exhibit 1, pp. 67:20 68:16.
[2] Deposition of Victor Slagle (hereafter Slagle) attached as Exhibit 2, pp. 7:22-23; 9:3-13.
[3] See footnote 6 below and record citations.
[4] Slagle pp. 9:14-10:4; 11:21-12:3.
[5] Slagle pp. 6:21-7:23; 8:2-11; 11:21-12:10.
[6] Slagle pp.7:1-8:11.
[7] Webb p.22:6-9; San Juan Regional Urgent Care note of January 18, 2010, Bates-stamped KWAL 112 produced by defendant, attached as Exhibit 3; Webb pp. 79:7-20; 84:2-87:1; 87:25-88:5; Pinion Hills Ear, Nose & Throat note of January 25, 2010, exhibit 9 to deposition of Harold K. McFarling, D.O., attached here as Exhibit 4.    .
[8] Id. at 7:17-19; 8:8-11.

D.      Slagle knew of Frank's illness with shingles and Bell's palsy when he decided to fire Frank and at least that it caused facial paralysis.[9] Frank told him that he had been diagnosed with shingles to which Slagle responded by scoffing and laughing, asking "what is that, some type of cough?"

E.      Webb tried to explain what shingles were but Slagle wasn't interested and changed the subject.[10]

E.      Slagle is the person who made the decision to fire Frank and did so on February 17, 2010.[11]

F.      Slagle is defendant's store director and supervises all stores in New Mexico.[12]

G.      The "policy" under which Webb was terminated was new, unwritten and had never been communicated to Webb, nor John Martinez, an Albuquerque store manager, until after Webb was fired.[13]

H.       Bob Abbott, who covered the store in Frank's absence, was a former store manager with the knowledge and experience to act as a store manager.[14]

I.      If Slagle had known that Abbott had told Frank that he should go to his doctor's appointment on January 25, and that he would cover the store, it might have mattered to Slagle in reaching his decision to fire Frank.[15]

---

[9] Slagle pp. 35:25-37:12; 37: 19:25; Webb pp. 24:11-25; 26:2-27:24.
[10] Webb p. 26:20-27:24.
[11] Slagle p. 6:18-20; Kwal Paint Summary of Counseling Report, attached as Exhibit 5.
[12] Defendant's Fact no. 3, Slagle deposition (hereafter Slagle) p. 21:1-14.
[13] Deposition of John Martinez attached as Exhibit 6 (hereafter Martinez) pp. 6:7-8; 7:15-17; 9:6-14; 12:4-14; p. 9:15-19; 8:20-9:5; 9:6-19; 10:25-11:11; 11:18-12:3; Webb pp. 33:4-36:23; pp. 50:4-18; 51:11-52:9.

[14] Slagle p. 16:18-24.

[15] Slagle 16: 25-17:4; 17:13:22.

J.      Slagle knew Abbot was in the store on January 25 because he was the one who told Slagle that Frank was out of the store.[16]

K.      Slagle had known of other times that Abbott had covered the store in Frank's absence without complaining about it or disciplining Frank.[17]

L.      Frank suffers from shingles and Bell's palsy and resulting peripheral neuropathy and post –herpetic neuralgia. He has been treated for these conditions by Dr. Harold McFarling.

M.      Dr. McFarling has been practicing as a doctor of osteopathy for thirty-four[18] years and has treated Webb since 1999, for shingles and then for the results of his shingles, Bell's palsy, peripheral neuropathy and post-herpetic neuralgia.[19]

N.      Shingles are a disorder caused by a virus that affects the nerves and causes blisters and pain and can lead to post-herpetic neuralgia, a permanent pain associated with the virus.[20]

O.      Frank was diagnosed with a recurrence of shingles on January 18, 2010. He had a previous history of incidences of shingles.[21]

P.      Treating shingles is an emergent situation because of the pain.[22]

Q.      Frank's condition required treatment with a medication to treat the nerves affected to reduce the pain.[23]

---

[16] Slagle pp10:14-11:9.
[17] Webb pp. 50:4-18; 51:11-52:9.
[18] Deposition of Harold K. McFarling, D.O. (hereafter McFarling) attached as Exhibit 7, pp. 5:12-6:21
[19] Id at pp. 6:17-21; 8:10-15; 20:5-9; 28:8-19; 33:3-15;34:19-35:3; 37:24-38:3; 38:21-39:9; 43:3-6
[20] Id at p. 16:1-18.
[21] McFarling p. 20:5-9; 8:10-15.
[22] Id. p. 24:16-22.
[23] Id. p. 28:8-19.

R.      Frank's Bell's palsy also required emergent treatment for the pain associate with the virus.[24]

S.      Frank's Bell's palsy left him with a permanent peripheral neuropathy and post-herpetic neuralgia pain.[25]

T.      Frank's facial paralysis is from damage to two branches of his facial nerve and cranial nerve.[26] It affects his ability to use his mouth,[27] and is permanent, severe and obvious.[28]


**Statement of disputed "facts" asserted by defendant's motion**

The following "facts" asserted by defendant's motion, as numbered therein, are disputed by the summary judgment record.

7.      Having a manager not in the store does not put the company at risk where it is covered as when Frank did it when he served as outside salesperson, or Bob Abbott covered it as a former manager.[29]

9.      Frank's disability did affect his ability to work at the store when he needed to be off for medical treatment; otherwise this allegation is irrelevant to a determination of his disability under the ADAAA.[30]

10.     Frank never had the chance to discuss the accommodation of having time off work from treatment as he was fired before he could talk to Slagle about

---

[24] Id. p. 30:11-23; 31:2-5;28:8-19.
[25] Id. at p. 33:3-15.
[26] Id. at pp. 34:19-35:3
[27] Id. at pp. 35:17-22; 38:21-39:9; 44:6-9.
[28] Id. at pp. 33:3-15; 37:24-38:3; 38:21-39:9; 43:3-6; Pinon Hills note, Exhibit 4 (noting "Diagnostic Impression, Bell's Palsy, severe").
[29] Additional facts H and K above and record citations offered in support; footnotes 64-67 below and record citations offered in support.
[30] See below discussion of  Prima Facie Case of Discrimination; Webb pp. 115:1-6; 122:7-9, 13-17.

it and within weeks after his telling Slagle of his diagnoses, from sometime in January 2010 to February 17, 2010.[31]

17.     Frank did not leave the store without "management" when he had to go to his appointment with a specialist on January 25, 2010 when the assistant manager called in sick, as Bob Abbott covered for him and he as a former manager was competent by experience and training to do so. Before Frank's diagnoses were known to Slagle, this had never been a problem, policy or practice before.[32]

20.     The legitimacy and truth of even whether Slagle viewed this as insubordinate is belied by the fact that it had never been a problem, with Slagle's knowledge that it occurred, before Frank's diagnosis.[33]

21.     The legitimacy and truthfulness of Slagle's professed reason for terminating Frank is contradicted and called into question by this "new" policy that was applied only to Frank up to and through the time of his termination,[34] contrary to past practice.[35] The third of three factors upon which Slagle allegedly decided to fire Frank was for an excused absence, the reason the store was without a manager was not Frank's excused absence, but his assistant manager's leaving the store when Mr. Tunno came to visit on February 5, 2010.[36] Tunno was upset with that assistant manager, not Frank.[37] It was Slagle who focused on Frank on

---

[31] Webb pp. 118:14-119: 15; 120:3-122:3.

[32] Additional Facts G, H, J and K and record citations offered in support.

[33] Additional Facts G, H, I, J, and K and record citations offered in support; Webb pp. 50:4-18; 51:11-52:9.

[34] Additional Facts G and K and record citations offered in support.

[35] Additional Facts G, H, J, and K and record citations offered in support.

[36] Additional Fact B and record citations offered in support.

[37] Additional Fact C and record citations offered in support.

learning that the assistant had left the store without a manager.[38] Other managers have left their stores unattended without being disciplined.[39] Slagle did not know the reason for the second absence for which he determined Frank should be fired, so how could he know if it was excused for some reason not violating this new "policy"?[40] Frank's termination came within weeks of his telling Slagle of his diagnoses,[41] and last but not least, Slagle told Frank he was being fired because he was sick.

**Standard of Review**

**General Summary Judgment Standard: Summary Judgment is Inappropriate in Most Employment Discrimination Cases**

A summary judgment motion doe not empower a court to act as the jury and determine witness credibility, weight the evidence, or choose between competing inferences.[42] Summary judgments "should seldom be used in employment discrimination cases."[43] Because discrimination cases often turn on the employer's intent, courts ordinarily consider summary judgment inappropriate to settle an issue like intent.[44] The summary judgment standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues."[45]  Under Rule 56, defendant here must show the

---

[38] Id.
[39] Additional Fact G and record citations offered in support.
[40] Additional Fact B and record citations offered in support.
[41] Additional Fact D and record citations offered in support;
[42] Windon Third Oil and Gas v. Federal Deposit Ins., 805 F.2d 342, 346 (10th Cir. 1986), cert. denied, 480 U.S. 947 (1987).
[43] O'Shea v. Yellow Technology Services, Inc., 185 F.3d 1093, 1098 (10th Cir. 1999).
[44] Cone v. Longmont United Hosp. Ass'n., 14, F.2d 526, 530 (10th Cir. 1994).
[45] Id.

absence of any material fact necessary to resolve matters in dispute with all evidence viewed in a manner most favorable to the non-movant.[46]

**Direct Evidence Standard**

Here Frank Webb presents direct evidence of discrimination, because Slagle tied his illness directly to his termination when Frank asked, "You're firing me for being sick?" and he replied "I'm afraid so."[47]  "When a plaintiff can show direct evidence from which a reasonable fact-finder could find discrimination, the burden-shifting analysis of McDonnell-Douglas[48] is not necessary.[49]

A plaintiff may recover if the plaintiff can demonstrate he or she is the victim of discrimination by direct evidence of discrimination.[50] "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons."[51]

In McGarry the Tenth Circuit reversed summary judgment for the employer finding that in a reverse discrimination case, where the defendant's personnel director told plaintiff that the two positions he had sought were "minority hiring" and "affirmative action hiring" creating a material issue of fact on direct evidence that he was not hired due to his non-minority race.[52]

Here a reasonable fact-finder could find that Slagle's response to "You're firing me for being sick?" is direct evidence that Frank's termination was motivated by his disability. The response is made by the decision-maker directly

---

[46] Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir. 1990).
[47] Webb, pp. 67-68:16.
[48] 411 U.S. 792 (1973).
[49] Id. at 736.
[50] McGarry v. Board of County Comm'rs of County of Pitkin, 175 F.3d 1193 (10th Cir. 1999)
[51] Danville v. Regional Lab. Corp., 292 F.3d 1246, 1249 (10th Cir. 2002).
[52] 175 F.3d at 1200.

in response to the question about the motive for his decision to fire Frank. The evidence shows a direct nexus between the alleged discriminatory statement and the decision to terminate Frank.[53] This is direct evidence that demonstrates on its face that the employment decision was reached for discriminatory reasons.[54]

**Argument and Authorities**

The defendant's entire legal analysis of Webb's ADA claim relies on outdated case law. It steadfastly ignores Congressional passage of the ADA Amendments Act of 2008, which fundamentally changed how a disability is defined and became effective January 1, 2009.

**I. Prima Facie Case of Disability Discrimination**. The defendant first argues that Webb cannot prevail as a matter of law regardless of the facts. According to defendant, there is no direct evidence of discrimination in this case, ignoring the statement by Slagle set forth above. Next, defendant contends that an individual with shingles and Bell's palsy who has suffered permanent and paralyzing nerve damage and is limited to how he may eat and drink is simply not someone with a disability. Even if he were qualified to seek protection from discrimination under the Americans with Disabilities Act, it next argues, he cannot win because defendant asserts that his termination was for a workplace policy violation and he cannot show pretext. Each argument is without merit.

---

[53] Perry v. Woodward, 199 F.3d 1126, 1134 (10th Cir. 1999)(quoting Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994)).
[54] Danville v. Regional Lab. Corp., 292 F.3d 1246, 1249 910th Cir. 2002).

The Applicable Law. To prove liability under this statute, Webb must prove that 1) he is a disabled person within the meaning of the ADA; 2) he is qualified to perform the essential functions of the job, with or without accommodation; and 3) the employer terminated employment under circumstances which give rise to an inference that the termination was based on the disability.[55]

Before the passage of the ADA Amendments Act, courts very strictly interpreted and applied the disability discrimination laws, resulting in scores of employees losing their claims because the term "disability" was defined so narrowly. All that changed effective January 1, 2009 – an historic event the defendant all but overlooks in its brief relegating this wholesale revision of the law to footnote 2 of their brief that the amendments "expanded certain definitions under the ADA." If one could properly describe reversing every case upon which defendant relies to assert that plaintiff is not a person deserving of protection under the ADAAA as "expanding certain definitions" this characterization might not be so frivolous, but the fact that defendant ignores this law means they have not supported their motion with facts or authority sufficient to meet their burden as movant under Rule 56 or LR-56.1(b).[56] Defendant may as well cite real estate law, which would be equally inapplicable to the legal issues at hand.[57] It simply does not matter how disabilities such as Webb's were dealt with under the old ADA and the old case law.

---

[55] Bones v. Honeywell International, Inc., 366 F.3d 869, 878 (10th Cir. 2004).

[56] See FED. R. CIV. P. 56(c);  Allen v. Muskogee, Okla., 119 F.3d 837, 839-840 (10th Cir. 1997), cert. denied, 118 S. Ct. 1165 (1998), citing Celotex v. Catrett, 477 U. S. 317, 322-23, 325 (1986).

[57] *See Feldman v. Law Enforcement Associates Corp.,* 2011 WL 891447 at *7, n.3 (E.D.N.C., March 10, 2011) (pre-ADAAA cases "carry little, if any, precedential weight(.)")

Indeed, the few cases that apply the new ADA reveal how much the law has changed. [58]

The materiality of any facts in dispute is dependent on the substantive law[59], and because defendant fails to cite a single case on the material issues in dispute not superseded or expressly reversed by the ADAAA they have failed to carry their burden on this motion.

Under the law applicable to **this** case, Congress mandates that the courts construe "disability" "in favor of broad coverage" and "to the maximum extent permitted by the terms of this chapter."[60] The law expressly rejects the judiciary's earlier case law because the previous judicial interpretations of what constituted a "disability" created an "inappropriately high level of limitation necessary to obtain coverage."[61] The law is now explicit – the question of whether impairment amounts to a disability "should not demand extensive analysis." A court's analysis of the ADA must now shift away from the complicated side-show of

---

[58] *See,e,g., Lowe v. American Eurocopter, LLC,* 2010 WL 5232523 at *7-8 (N.D.Miss., December 16, 2010 )("Based on the substantial expansion of the ADA by the ADAAA, Defendant's assertion that Plaintiff's weight cannot be considered a disability is misplaced."); *Chamberlain v.Valley Health System, Inc.,* 2011 WL 560777, *5 (W.D.Va. Feb. 8, 2011) (Under the ADAAA, plaintiff with a "visual field defect," that healed completely within one month is still able to survive summary judgment on the disability issue). Cook v. Equilon Enters., L.L.C., 2010 WL 4367004, *6 (S.D. Tex. Oct. 26, 2010) (Ellison, J.); see also Norton v. Assisted Living Concepts, Inc., __F. Supp. 2d _, 2011 WL 1832952, *7 (E.D. Tex. May 13, 2011) (noting that the ADAAA expanded the ADA's definition of the term 'disability'). See Meinelt v. P.F. Chang's China Bistro, Inc., __ F. Supp. 2d _, 2011 WL 2118709 (S.D. Tex. May 26, 2011) (Rosenthal, J.) (denying summary judgment where the plaintiff had an operable brain tumor).

[59]Allen at 839, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)
[60] 42 U.S.C. § 12102(4)(A).
[61] ADA Amendments Act of 2008 11 (ADAAA), Pub.L. 110-325, Section 2(b)(4-5), Sept. 25, 2008; §12102(4)(B)(incorporating findings and purposes of the ADAAA)

whether someone is disabled, and instead focus on the real question: whether there was illegal discrimination.[62]

### A. Defendant Regarded Webb As Disabled

Defendant fails to brief at all the biggest change to the ADA, the "regarded as" prong of the statute, which in and of itself mandates that the motion be denied at least as to the "regarded as" allegation of plaintiff's complaint. No longer does a plaintiff have to prove that his employer perceives his impairment as limiting a major life activity.[63] Now, it matters not whether Webb's impairment limited any of his major activities. If a plaintiff has impairment – real or perceived by the employer – he is entitled to protection.[64] Shingles and Webb's resulting related peripheral neuropathy, post-herpetic neuralgia and Bell's Palsy fit the bill.

There is no need to look any further than the defendant's own testimony to see that Webb was regarded as having a disability. Slagle testified that he knew that Frank had Bell's Palsy and shingles, and that he had facial paralysis from the Bell's Palsy.[65] He knew that one of Frank's prior absences upon which he terminated him was due to his needing medical treatment for his Bell's Palsy and shingles.[66]

Defendant does not, and cannot, meet its burden to show itself entitled to a defense under the "regarded as" prong of the statute. To do so, it would have

---

[62] Id. at 2(b)(5).
[63] § 12102(3)(A).
[64] § 12102(3)(A).
[65] Slagle pp. 35:25-36:4; 37:19-25.
[66] Id.

to prove that Webb's perceived impairments were both transitory and minor.[67]. This defense is designed for passing illnesses like the common cold.[68] There is no evidence whatsoever that anyone even believed that Webb's disabilities were minor and transitory impairments and his doctor says they are permanent.[69]

### B. Webb's Actual Disability

In addition, the evidence is undisputed that Webb has an actual disability at the time of his termination. First, his major life activity of eating was significantly impaired. §12102(2)(A). Second, the damage to Frank's facial nerves are permanent, his peripheral neuropathy.[70] The permanent damage to his nerves is a disability as it is a substantial limitation on a major life activity of eating[71] and the operation of a major bodily function, neurological function, under the new law.[72]

### C. Attendance issue

Defendant asserts that Frank was not a qualified individual with a disability because attendance is an essential function of the position. This is not a case where Frank had excessive, illegitimate absences. He missed two days for emergently- needed medical attention.[73] His doctors characterize both the January 18 and January 25 appointments as emergently needed.[74] He could not reschedule the second of those appointments without delaying his treatment for

---

[67] §12102(3)(B); 76 Fed. Reg. 16978-01 at 1698514 (whether the impairment at issue would be "transitory and minor" is to be determined objectively)
[68] 76 Fed.Reg. at 1698115 (examples of "temporary, non-chronic impairments" that typically will not substantially limit a major life activity include "the common cold, seasonal or common influenza....").
[69] Additional Facts S and T and record citations offered in support.
[70] Id.
[71] Webb pp. 114:1-10, Additional Facts S and T and record citation offered in support.
[72] §§ 12102 (1)(A) and (2)(B).
[73] Additional Fact P and R and record citations offered in support.
[74] Id, see footnote 28 and record citations offered there.

the pain and injury to his nerve function.[75] The last "absence" was excused, so it is not a policy violation for which he can be faulted that the person left in charge failed to be in the store when Mr. Tunno visited. Terminating Frank for missing work for medical treatment is a per se violation of the clear mandate and purposes of the ADAAA.[76]

### D. Disparate Treatment

"A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently than other similarly-situated employees who violated work rules of comparable seriousness."[77] To assert a claim of disparate treatment, the plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness."[78] "Individuals are considered 'similarly-situated' when they ((i)) have dealt with the same supervisor; ((ii)) were subjected to the same work standards; and ((iii)) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[79] A court should compare "the relevant employment circumstances, such as work history and company policies, applicable to the

---

[75] Additional Facts P, Q, and R and record citations offered in support; Webb pp. 95:11-96:5; 97:10-24.

[76] See "An allowance of time for medical care or treatment may constitute a reasonable accommodation." Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1110 (10th Cir. 1999); Hudson v. MCI Telecommunications Corp., 87 F.3d 1167 (10th Cir. 1999)(a reasonable allowance of time for medical care and treatment may, in appropriate circumstances, constitute a reasonable accommodation".

[77] Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000)."

[78] Aramburu v. The Boeing Co., 112 F.3d 1398,1403 (10th Cir. 1997).

[79] Buhendwa v. Univ. of Colo. at Boulder, 214 Fed.Appx. 823, 828 (10th Cir. 2007).

plaintiff and the intended comparable employees in determining whether they are similarly situated."[80]

In this case, there is clear evidence of disparate treatment. Frank Webb has a disability and that illness led to his termination for the alleged reason that he left the defendant's store without a manager on three occasions, albeit one of which was when he had an excused absence and his assistant manager took off for lunch. Other store managers who were also supervised by Vic Slagle who left their stores unattended were not even disciplined.

John Martinez, a Kwal's Albuquerque store manager since 1996,[81] testified that he has personally left his store without a manager, but without being disciplined, including where both he and another manager might have been absent due to medical appointments.[82] The unwritten[83] "policy" under which defendant terminated Webb was a new policy, and the first Martinez was ever made aware of it was after Webb was fired.[84] Martinez knows of at least one other manager who has been absent from his store leaving no manager on duty, Rocky Meynes, another Albuquerque manager.

Before Slagle's tenure, and before Frank's termination, the practice was that Webb, when he was outside salesperson, would cover the store when the managers needed to be gone.[85] There were many occasions when Webb as salesperson before he was store manager would cover the store, with the

---

[80] Id. (citing David v. City and County of Denver, 101 F.3d 1344, 1359-60 (10th Cir. 1996)
[81] Martinez pp. 6:7-8; 7:15-17.
[82] Martinez pp. 9:6-14; 12:4-14.
[83] Id. p. 9:15-19.
[84] Id. pp. 8:20-9:5; 9:6-19; 10:25-11:11; 11:18-12:3
[85] Webb pp. 33:4-36:23.

knowledge of the then-store director.[86] This even happened on occasion when the prior store director Bob Eveler would come and take both store managers out to lunch.[87] No one was terminated for these "absences". Even while Slagle was store director, Bob Abbott, a former manager, had covered the store, with Slagle's knowledge.[88]

### E. Pretext

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." [89]

A plaintiff typically shows pretext in one of three ways: (i) with evidence that the defendant's stated reason for the adverse employment action was false; (ii) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (iii) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.[90]

---

[86] Webb pp. 34:1-36:23.
[87] Webb pp. 34:1-7.
[88] Webb pp. 50:4-18; 51:11-52:9.
[89] Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)(internal quotations omitted).
[90] Green v. New Mexico, 420 F.3d 1189, 1193 (10th Cir. 2005).

"The plaintiff is not required to present evidence of actual discrimination to establish pretext, because '(e)vidence tending to show pretext permits an inference that the employer acted for discriminatory reasons.'"[91]

"A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness."[92] A plaintiff cannot, however, be forced to pursue any particular means of demonstrating a defendant's proffered non-discriminatory reason is pretextual.[93] Moreover, a plaintiff is not required to introduce sufficient evidence to find both that the employer's reasons are false and the real reason is discrimination.[94]

Here, pretext is shown by the disparate treatment evidence set forth above, among other matters. Slagle claims  he terminated Frank under "new" policy that was applied only to Frank up to and through the time of his termination,[95] contrary to past practice.[96] A jury could reasonably believe that the application of this policy to Frank only was pretext.

Slagle's claim that he fired Frank in part because while he was out on an **excused absence** and the assistant manager left the store unattended by a manager is further evidence of pretext. Couldn't a jury decide that Frank did not violate the alleged policy since his absence was excused? Tunno's report of this

---

[91] Mirzai v. State of N.M. Gen. Servs. Dep't, 506 F.Supp.2d 767, 776 (D.N.M. 2007).

[92] Kendrick v. Penske Transp. Servs., Inc., 220 F.3d at 1230.
[93] See, id.
[94] See Guyton v. Ottawa Truck Div., Kalmar Indus. U.S.A., Inc., 15 Fed.Appx. at 577.

[95] Additional Facts G and K and record citations offered in support.
[96] Additional Facts G, H, J, and K and record citations offered in support.

to Slagle was to complaint about the assistant, not Frank. [97]  Slagle seized on this issue to focus it on Frank allegedly violating policy. The summary judgment evidence dictates that Slagle's credibility on this be decided.

According to both Frank and John Martinez, other managers have left their stores unattended without being disciplined.[98] Pretext shown by disparate treatment.

Slagle did not know the reason for the second absence for which he determined Frank should be fired, so how could he know if it was excused for some reason not violating this new "policy"?[99] Failure to investigate the fact is evidence that this purported policy violation reason could be found pretext.[100]

Frank's termination came within weeks of his telling Slagle of his diagnoses,[101] so the temporal proximity also shows that this could be pretext.[102]

Slagle told Frank he was being fired because he was sick. Is that true, and therefore this is illegal discrimination, or is it not? If true, as it must be treated here, it is evidence of pretext.

Webb does concede, as shown by his proposed amended complaint attached to his Motion to Amend Complaint, that he cannot prevail on his associational claim.

For the reasons and on the authorities cited, plaintiff respectfully requests that defendant's motion be denied.

---

[97] Additional Fact C and record citations offered in support.
[98] Additional Fact G and record citations offered in support.
[99] Additional Fact B and record citations offered in support.
[100] See, Trujillo v. PacificCorp., 524, F.3d 1149, 1159-1160 (10th Cir. 2008).
[101] Additional Fact D and record citations offered in support;
[102] See Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir.1996)

Respectfully submitted,

VALDEZ AND WHITE LAW FIRM, LLC

 electronically signed
Timothy L. White
P.O. Box 25646
Albuquerque, N.M. 87125
Telephone: (505) 345-0289
Fax: (505) 345-2573
Attorneys for Plaintiff

CERTIFICATE OF SERVICE

This is to certify that this response was emailed on August 11, 2011, to the

following counsel of record:

Agnes Fuentevilla Padilla
P.O. Box 3170
Albuquerque, N.M. 87190-3 l70

  electronically signed

Timothy L. White